UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALBERT L. WILLIS                                    CIVIL ACTION

VERSUS

JANET NAPOLITANO, SECRETARY                         NO.: 11-00708-BAJ-SCR
U.S. DEPARTMENT OF HOMELAND
SECURITY

RULING AND ORDER

Before the Court is **Defendant's Motion for Summary Judgment (Doc. 51),** filed by Janet Napolitano ("Napolitano"), former Secretary of the Department of Homeland Security, seeking an order from this Court granting summary judgment against Plaintiff Albert L. Willis' ("Willis"), with prejudice, pursuant to Federal Rule of Civil Procedure ("Rule") 56.[1] Willis opposes the motion. (Doc. 61.) In response to Willis' memorandum in opposition, Napolitano filed a reply memorandum. (Doc. 64.) The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    Background

Willis filed this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging claims of race discrimination, gender discrimination, and retaliation. Specifically, Willis, an

---

[1] In an earlier order, the Court granted Defendants' motion to dismiss all claims asserted against Defendants the United States of America, the Department of Homeland Security, the Federal Emergency Management Agency, Libby Turner, Ann Charlton, Smitty Bell, Kurtis Melnick, and Attorney General Eric Holder, Jr. (Docs. 22, 32.) Thus, the only remaining claims are Willis' race discrimination, gender discrimination, and retaliation claims against Napolitano.

African American male, alleges that the Federal Emergency Management Agency ("FEMA") discriminated and retaliated against him when it terminated him from a Logistics Management Specialist GS-11 position at FEMA's Louisiana Transitional Recovery Office ("LATRO") in Baton Rouge, Louisiana.

The following facts are uncontested. The Stafford Act authorizes FEMA to hire temporary personnel to perform disaster and emergency services for which it does not have adequate, full-time employees. As disaster-related work ends or is reduced over time, FEMA reduces its number of temporary employees through a process it terms "rightsizing." FEMA traditionally uses objective criteria in determining which temporary employees will be released such as whether an employee is a subject matter expert, the employee's official performance rating of record, and the employee's service computation date.

After Hurricane Katrina, FEMA opened LATRO with a number of "Stafford employees" for the purpose of managing disaster relief activities. FEMA extended temporary employment contracts in two-year increments with the possibility of extension. FEMA informed LATRO employees of the temporary nature of their employment.

Willis was a Stafford employee, originally hired in 2006 as a Cadre of On-Call Response and Recovery ("CORE") at the Baton Rouge office of LATRO. Willis was initially employed for a two-year term. Although, after extension and promotion to a Logistics Management Specialist, Support Services, GS-11 position, his ultimate employment term was not set to accrue until January 7, 2010. On July 28, 2009,

2

however, FEMA informed Willis that his position at LATRO was being eliminated due to lack of work. FEMA rightsized Willis and the other two members of his functional group effective August 15, 2009.[2]

On October 7, 2009, Willis filed a formal complaint with the Department of Homeland Security-FEMA Office of Equal Rights. (Doc. 51-14.) Willis also requested a hearing in front of an Equal Employment Opportunity Commission ("EEOC") Administrative Judge on November 18, 2010. On June 28, 2011, the EEOC denied Willis' request, and issued a decision without a hearing, finding that Willis failed to establish a *prima facie* case of discrimination and failed to establish a *prima facie* case of retaliation. (Doc. 51-16.)[3]

As it relates to the instant motion, Napolitano argues that: (1) Willis has failed to establish a *prima facie* case of race discrimination, gender discrimination, and retaliation; and (2) assuming arguendo he could establish a *prima facie* case, Willis has failed to rebut Napolitano's asserted legitimate, non-discriminatory reason for his termination, rightsizing.

In opposition, Willis argues that there is a genuine issue of material fact with respect to whether he was treated less favorably than similarly situated individuals outside of his race and gender. Further, he argues that a genuine issue of material

---

[2] Willis worked alongside Carey Braxton ("Braxton") (African American, male) and Rodney Kilbourne ("Kilbourne") (African American, male).

[3] Neither Willis nor Napolitano point to any formal complaint that Willis filed directly with the EEOC. It seems, instead, that the agency adopted the formal complaint filed with the FEMA Equal Rights Office and issued its decision based on the allegations in that complaint.

Case 3:11-cv-00708-BAJ-SCR   Document 65   12/10/13   Page 3 of 16

fact exists as to whether he was retaliated against for engaging in Title VII protected activity.[4]

## II.    Standard of Review

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* at 248-49. In order to grant a motion for summary judgment, the court must be satisfied "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson*, 477 U.S. at 249).

The moving party bears the burden of establishing that there are no genuine issues of material fact. *Celotex*, 477 U.S. at 324. However, if the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Id.* at 325; *Lavespere*, 910 F.2d at 178. The burden then shifts to the

---

[4] In his memorandum in opposition, Willis presented two additional arguments. First, he suggests that his then-acting supervisor, Kurtis Melnick, ignited a discriminatory scheme in which he favored Caucasians, females, and those African Americans that socialized with him. Second, he argues that certain individuals at LATRO should have been rightsized before 2009. However, for the reasons stated below, the Court need not address these additional arguments.

nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *Id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

In an employment discrimination case, the Court must "focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447-48 (5th Cir. 1996). The Court "must draw all reasonable inferences in favor of the nonmoving party, and [the Court] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, Inc. 530 U.S. 133, 150 (2000).

However, the nonmovant's burden in a summary judgment motion is not satisfied by conclusory allegations, unsubstantiated assertions, or by a mere scintilla of evidence. *Liquid Air Corp.*, 37 F.3d at 1075. Instead, "[t]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation marks omitted). If the non-moving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## III. Analysis

### A. <u>Willis' Race Discrimination Claim</u>

A Title VII plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff must prove a *prima facie* case of race discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the employment position at issue; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside of his protected group. *Id.; Corley v. Louisiana ex. rel. Div. of Admin, Office of Risk Management,* 498 F. Appx. 448, 450 (5th Cir. 2012). Once established, the plaintiff's *prima facie* case raises an inference of intentional discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802.

The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* If the defendant presents a nondiscriminatory reason, the presumption of discrimination ceases, and the plaintiff must "offer sufficient evidence to create a genuine issue of material fact either that: (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004).

6

It is uncontested that Willis has satisfied the first three elements of a *prima facie* race discrimination case. Napolitano contests, however, whether Willis was treated less favorably than similarly situated employees outside of his protected group.

In support of her motion, Napolitano argues that Willis cannot satisfy this final element because he was only similarly situated to those members of his functional group, and because all members of his functional group were rightsized at the same time.

In opposition, Willis argues that there is a genuine issue of material fact as to whether he was similarly situated to Stephen Schwarz ("Schwarz"), a Caucasian male he believes is currently employed as a Logistics Management Specialist at LATRO. [5]

In disparate treatment cases,[6] the plaintiff-employee must show "nearly identical" circumstances for employees to be considered similarly situated. *Berquist v. Washington Mutual Bank,* 500 F.3d 344, 353 (5th Cir. 2007). The Fifth Circuit has noted that "nearly identical" is not synonymous with "identical" because total identity would be essentially insurmountable. *Lee v. Kansas City Southern Railway*

---

[5] In his initial complaint and a sworn affidavit submitted to the Court by both Willis and Napolitano, Willis also offered the following comparators that he believed were treated more favorably than he: Jonathan Clark (African American, male), Demontrell Hunter (African American, male), Loretta Kauffman (African American, female), Tracey Pitcher (African American, sex unknown), Steven Schwarz (Caucasian, male), Roxanne Schwarz (Caucasian, female), David Thibodeaux (Caucasian, male), Andrew Boyce (Caucasian, male), Keith Killen (Caucasian, male), and Ashley Shuffield (Caucasian, female). In his memorandum in opposition, however, Willis only claims that there is genuine issue of material fact with regard to him being similarly situated with Stephen Schwarz.

[6] Here, Willis' complaint alleges disparate treatment only; that is, how he was treated compared to other employees outside of his protected class. His complaint does not allege disparate impact, i.e., that FEMA's facially neutral employment policies have an adverse impact on the entire protected class. Thus, the Court's analysis will reflect the evidentiary framework for disparate treatment claims.

*Co.,* 574 F.3d 253, 259-61 (5th Cir. 2009). Instead, if a plaintiff proffers a comparator, the employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared: (1) held the same job or responsibilities; (2) shared the same supervisor or had their employment status determined by the same person; *and* (3) have essentially comparable violation histories. *Id.* at 260 (internal citations omitted) (emphasis added).

In applying this standard, courts look for clear evidence in the record that job responsibilities are similar and consider disparities in employment hierarchy as evidence that employees are not similarly situated. *See Player v. Kansas City Southern Ry. Co.,* 496 F. Appx. 479, 482 (5th Cir. 2012) (refusing to find that two employees were similarly situated when the plaintiff could not cite any record evidence that suggested he and his comparators held the same job responsibilities); *see also Crosby v. Computer Science Corp.,* 470 F. Appx. 307, 309 (5th Cir. 2012) (noting that the district court correctly determined that the plaintiff was not similarly situated to his supervisor because the two employees could not possibly share the same supervisor); *Martin v. Budget Rent-A-Car Systems, Inc.,* 432 F. Appx. 407, 411 (5th Cir. 2011) (noting that the fact that employees are all responsible for "providing a service to customers" does not meet the nearly identical standard); *Brown v. Transit Management of Southeast Louisiana, Inc.,* No. 10-2620, 2011 WL 5119017, *4-5, 2011 LEXIS 124576, *17-18 (E.D. La. Oct. 27, 2011) (holding that two employees were not similarly situated when one employee

8

supervised the other and they worked in two entirely separate departments, being responsible for their own, unrelated duties).

With this standard in mind, the Court concludes that Willis has failed to point to sufficient evidence to establish that he was similarly situated to Schwarz. In a sworn affidavit submitted by both Willis and Napolitano to the Court, Willis concedes that he worked alongside and under the same immediate supervisor as only those individuals in his immediate functional group:

> [Q.] *Did any other Logistics Management Specialists work in the same location and under the same supervisor as you? If so, identify them by name, race and sex.*
> [A.] Rodney Kilbourne Black/Male, Carey Braxton Black/Male, and Donald Ruffin Black/Male who worked in the mail room and was not supervised by Melnick/Lawrence.

(Doc. 61-3, p. 2.)

Willis has also failed to point to sufficient evidence to establish that he and Schwarz shared the same job or duties. Willis worked in Support Services; his job duties included items such as transporting trainees to and from New Orleans and picking up cars from the mechanic. (Doc. 61-3, at 4.) Schwarz worked in Ground Support. (Doc. 61-3, at 7.) The record indicates that Ground Support is a different functional section from Support Services. (Doc. 61-3, at 7.) Further, Willis has failed to point to any evidence in the record to establish that he and Schwarz shared the same job responsibilities. Willis' conclusory statements are insufficient to establish that he and Schwarz were similarly situated.

A review of the record indicates that Willis' circumstances at the time of his termination were "nearly identical" to those individuals in his immediate functional

group only. Namely, Kilbourne and Braxton. It is uncontested that Willis, Kilbourne, and Braxton were all rightsized at the same time. Therefore, it cannot be said that Willis was treated less favorably than those who were similarly situated to him.

In sum, the Court concludes that Willis has failed to meet the last element of a *prima facie* race discrimination case by failing to show that he was treated less favorably than similarly situated employees outside of his protected class. Thus, summary judgment on his race discrimination claim is appropriate. *See Goree v. Commission Lincoln Parish Detention Center*, 437 F. Appx. 329, 332 (5th Cir. 2011) ("In the context of employment discrimination claims, summary judgment is appropriate for the defendant if the plaintiff fails to establish a *prima facie* case...").

### B.    Willis' Gender Discrimination Claim

A Title VII plaintiff bears the initial burden to prove a *prima facie* case of gender discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.*, 411 U.S. at 802. To establish a *prima facie* case of gender discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the employment position at issue; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside of his protected group. *Id.; Anthony v. Donahoe*, 460 F. Appx. 399, 402-03 (5th Cir. 2012). Once established, the plaintiff's *prima facie* case raises an inference of intentional discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802.

Case 3:11-cv-00708-BAJ-SCR   Document 65   12/10/13   Page 10 of 16

The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* If the defendant presents a nondiscriminatory reason, the presumption of discrimination ceases, and the plaintiff must "offer sufficient evidence to create a genuine issue of material fact that either: (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid,* 376 F.3d at 312.

Once again, it is uncontested that Willis has met the first three elements of a *prima facie* gender discrimination case. Napolitano contests, however, whether Willis was treated less favorably than similarly situated employees outside of his protected group.

In support of her motion, Napolitano again argues that Willis cannot satisfy this final element because he was only similarly situated to those members of his functional group, and because all members of his functional group were rightsized at the same time.

In opposition, Willis fails to identify an employee outside of his protected class whom he considers to be similarly situated. Further, as noted above, a review of the record indicates that Willis' circumstances at the time of his termination were "nearly identical" to Kilbourne and Braxton only. Kilbourne and Braxton are not outside of Willis' protected class. Additionally, it is uncontested that Willis,

11

Kilbourne, and Braxton were all rightsized at the same time. Therefore, it cannot be said that Willis was treated less favorably than similarly situated employees who were outside of his protected class

In sum, the Court concludes that Willis has failed to meet the last element of the *prima facie* case. Thus, summary judgment on his gender discrimination claim is appropriate. *See Goree,* 437 F. Appx. at 332.

## C.    Willis' Retaliation Claim

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. 2002).

If the plaintiff can establish a *prima facie* case, the burden shifts to the defendant to demonstrate a legitimate, non-retaliatory purpose for the employment action. *Id.* If shown, the plaintiff must again establish that the defendant's stated reason for the employment action is a pretext for retaliation. *Id.*

It is uncontested that Willis has met the second element. Napolitano contests, however, whether Willis engaged in a protected activity, and whether a causal connection exists between the protected activity and the adverse employment action.

The Court will first address whether Willis was engaged in a protected activity. In support of her motion, Napolitano argues that Willis did not engage in

12

Title VII protected activity because Willis did not report any unlawful or discriminatory practices. Further, even if he had, Napolitano argues that "responsible management officials" could not have known of any such activity because they did not know Willis and were located out of state. (Doc. 51-1, p. 11.)

In opposition, Willis argues that he engaged in protected activity when he complained to Human Resources of an incident during which a lower-level supervisor, Taejeanne Lawrence ("Lawrence"), scolded him and his fellow employees for not working when their project Lead was late.[7]

Under Title VII, protected activities consist of: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *Rodriquez v. Wal-Mart Stores, Inc.,* -- F. Appx. ---, No. 13-10154, 2013 WL 5274468, *6, 2013 LEXIS 19345, *17 (5th Cir. 2013). An employee that files an internal complaint of discrimination engages in a protected activity. *Id.* (citing *Fierros v. Tex. Dep't of Health,* 274 F.3d 187, 194 (5th Cir. 2001)). However, while opposition to discrimination need not be in formal written form, internal complaints must reference discrimination or other unlawful employment activity in order to be protected. *Id.*

Under the standards set by the Fifth Circuit, Willis has failed to establish that he engaged a protected activity. Willis did not provide the Court with a copy of

---

[7] Willis describes the Lawrence incident as follows: Not being able to access the proper equipment without the Lead, the team, which included Willis, could not start working. When Lawrence, a then-acting lower level manager, arrived on the scene, she scolded the men by saying, "What are ya'll doing? Lollygagging?!" Subsequently, she and Willis got into an argument. As a result, Lawrence asked Willis to go home.

the internal complaint that he allegedly filed with LATRO or FEMA in 2007. Thus, the Court is unable to verify that his complaint referenced discrimination. Further, in his own statement of uncontested facts, Willis states that he reported the incident, not because of discrimination, but because he no longer enjoyed his work and did not appreciate being reprimanded and humiliated for not doing someone else's job. (Doc. 61-15, p. 3.) In sum, Willis has failed to establish that his internal complaint referenced discrimination or any other unlawful employment activity, and thus, failed to meet the first element.

Assuming, *arguendo*, that Willis established that he engaged in Title VII protected activity, Willis has failed to establish that there is a causal nexus between his protected activity and his termination.

The United States Supreme Court very recently held that Title VII retaliation claims must be proved according to traditional principles of but-for causation. *University of Texas Southwestern Medical Center v. Nassar,* 133 S. Ct. 2517, 2532-33 (2013). In other words, a plaintiff must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Id.* at 2533. The Fifth Circuit has interpreted this but-for standard to apply to the plaintiff's burden of establishing a *prima facie* retaliation case. *Finnie v. Lee County, Miss.,* -- F. Appx. ---, 2013 WL 4852244, *2 (5th Cir. 2013) ("To meet the third prong [of a *prima facie* case], *Nassar* requires that Finnie provide sufficient evidence to allow a reasonable juror to conclude that her filing of an EEOC claim was the "but-for" cause of her termination, and that, had she not

filed the claim, she would have remained in her position at the Lee County Detention Center.").

Here, Willis contends that he complained to Human Resources in 2007. His termination, however, did not occur until 2009. Additionally, the very nature of Willis' employment was temporary. Indeed, LATRO informed Willis of the potential for his employment to be extinguished at any time. Further, the August 2009 rightsizing occurred four years after Hurricane Katrina and the creation of LATRO. Thus, it is reasonable to believe that the work necessary for the organization to function decreased over time.

In sum, considering the time delay between Willis' initial complaint and his termination, and the general temporary nature of his employment, it cannot be said that Willis was terminated because he engaged in protected activity. Indeed, Willis has failed to point to *any* evidence in the record to establish a causal nexus between the two.

In sum, the Court concludes that Willis has failed to point to evidence sufficient to establish the first and last elements of a *prima facie* case for retaliation. Accordingly, summary judgment is appropriate on Willis' retaliation claim.

Case 3:11-cv-00708-BAJ-SCR   Document 65   12/10/13   Page 15 of 16

IV.    Conclusion

Accordingly,

**IT IS ORDERED** that **Defendant's Motion for Summary Judgment (Doc. 51)** is **GRANTED**.

**IT IS FURTHER ORDERED** that    Plaintiff Albert L. Willis' claims against Defendant Janet Napolitano are **DISMISSED**.

**IT IS FURTHER ORDERED** that    the    above-captioned    matter    is **DISMISSED WITH PREJUDICE**.

A judgment shall be issued by separate order.

Baton Rouge, Louisiana, this 10th day of December, 2013.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

16